# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

AMANDA HARMON,

       PLAINTIFF,

v.                             CASE NO.:

GENTIVA HEALTH SERVICES
INC. d/b/a KINDRED AT HOME –
PENSACOLA,

       DEFENDANT.
_____/

## COMPLAINT

Plaintiff, Amanda Harmon (hereinafter referred to as "Plaintiff" or ("Harmon"), by and through her undersigned attorney, sues the Gentiva Health Services (certified) Inc. d/b/a Kindred at Home - Pensacola, (hereinafter referred to as "Defendant" or "Kindred at Home"), and alleges as follows:

### *JURISDICTION AND VENUE*

1.     This is an action to remedy discrimination on the basis of disability, and retaliation in the terms, conditions, and privileges of Plaintiff's employment in violation of the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008 (ADAA), the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes; Florida's Workers' Compensation Retaliation Law § 440.205, Florida

Statutes; Florida Private Sector Whistle-Blower's Act ("FPWA"), §§ 448.101 – 448.105, Florida Statutes (2014), and 29 USCS §§ 2611 et seq. Family Medical Leave Act.

2.      Defendant is considered an employer within the terms and conditions of the 29 USCS §§ 2611 et seq. ("FMLA"). Defendant employs fifty (50) or more employees within 75 miles of the worksite of Plaintiff.

3.      Plaintiff worked for Defendant from March 5, 2018, until her involuntary termination on July 1, 2019. Plaintiff is considered an "eligible employee" for purposes of the FMLA as she has been employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

4.      The FMLA does not contain an exhaustion requirement and Plaintiff is not required to exhaust administrative remedies before bringing suit.

5.      Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f).

6.      Declaratory, injunctive, and equitable relief is sought pursuant to 28 U. S. C. §§ 2201, 2202 and 42 U.S.C. § 2000e-5(g).

7.      Costs and attorney's fees are sought pursuant to 42 U.S.C. §2000e-5(k), Fed. R. Civ. P. 54 and other Florida Statutes as set forth herein.

8.      This action lies in the Northern District of Florida, Pensacola

Division, pursuant to 29 U.S.C. § 1391(b), because the action arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed in this judicial district.

9.     All conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f). Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.: 201920986) and the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D201901073) on July 23, 2019. On January 19, 2020, more than 180 days lapsed since Plaintiff's charge was filed and the FCHR had not concluded its investigation or made a determination pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested her 90 day Notice of Right to Sue letter from the EEOC which was received on November 09, 2020.

## *PARTIES*

10.     Plaintiff is a Caucasian female and a citizen of the State of Florida, Escambia County and who resides in Pensacola, Florida.

11.     Defendant, CCBCU is an employer within the meaning of the ADAA and the Florida Civil Rights Act as it employs in excess of fifteen (15) employees.

## *FACTS*

12.     Plaintiff is a 44 year old Caucasian female.

13.     Plaintiff was employed by Defendant at its Pensacola, Florida location as a Certified Occupational Therapy Assistant (COTA) from March 5, 2018, until her termination on July 1, 2019.

14.     During Plaintiff's time with Defendant, she performed the duties and responsibilities of her position in a more than satisfactory manner.

15.     On April 12, 2018, Plaintiff injured her back while helping a patient.

16.      Plaintiff immediately reported her injury to her supervisor, Erin Freeman.

17.     Plaintiff was sent by Defendant's HR department to Sacred Heart Urgent Care to be evaluated.

18.     On April 16, 2018, Plaintiff was released to work light duty and the following week Plaintiff was back to working a full-time schedule.

19.     After Plaintiff returned to work, her back pain continued and became more intense, as her hours and workload were extended.

20.     Plaintiff underwent an MRI and afterwards, her Physician recommended a fusion surgery.

21.     Plaintiff continued to ask for reduced hours to help manage the pain and attend appointments.

22.     On June 25, Plaintiff informed the scheduler, Alisha Cadenhead that she was in severe pain and needed to schedule her fusion surgery and PTO to

attend appointments.

23.    Ms. Cadenhead informed Plaintiff that her request for leave was not possible and she had to keep working.

24.    The next week Plaintiff informed her nurse case manager of her need for surgery and her request for medical leave.

25.    Plaintiff requested a leave of absence multiple times from both Melissa Bowman and Alica Cadenhead, and at the June 2019, weekly meetings, Plaintiff would request and discuss with both Ms. Bowman and Ms. Cadenhead that she needed to take a leave of absence due to medical issues from her work-related back injury.

26.    Ms. Cadenhead informed Plaintiff that even if she filed for it, she would not receive it because two OTs were on vacation out of the country and the other two had vacation already scheduled.

27.    At this time, Plaintiff informed Ms. Cadenhead that she had no choice and would have to use the rest of her PTO if no other type of leave was available.

28.    Ms. Cadenhead stated "I wish you luck with that. You will not be approved."

29.    Defendant had knowledge Plaintiff is a qualified individual with a disability:

(a) she has a physical impairment that substantially limits one or more

5

major life activities: she suffers from a lack of mobility.

(b) Plaintiff is under doctor's care for treatment of her physical disabilities.

(c) she has a record of such impairment; and,

(d) she was regarded by his employer as having impairments.

28.    Plaintiff's disabilities substantially affect the major life activities of mobility.

29.    Plaintiff had the ability to perform the essential functions of her position with or without a reasonable accommodation and did so in a satisfactory manner.

30.    Defendant has had knowledge of Plaintiff's work related injuries, her continued treatment and need for fusion surgery to aide in her recovery.

31.    Plaintiff request for time off and/or a reduced work schedule to assist her in obtaining treatment for her injuries and pain was not unreasonable and should have been granted by Defendant.

32.    Defendant also had sufficient information to know that Plaintiff was a qualified individual and that her medical condition would have qualified her for FMLA leave.

33.    Plaintiff's verbal notice to Ms. Cadenhead and Ms. Bowman was sufficient to assert rights under the FMLA, as she conveyed more than enough

information to put Defendant on notice that an event described in the FMLA may have occurred.

34.    Defendant knew of Plaintiff's medical condition and refused to complete the necessary paperwork for her FMLA leave or acknowledge her medical condition.

35.    At no time after Plaintiff's injury did Defendant, mail or otherwise provide Plaintiff with any FMLA paperwork.

36.    Defendant's supervisors nor Defendant's HR department ever notified Plaintiff in writing of her eligibility to take FMLA leave.

37.    Instead, Ms. A. Cadenhead told Plaintiff she wished her luck on trying to get her PTO for the surgery approved.

38.    On April 12, 2019, Defendant acquired sufficient knowledge that Plaintiff's leave may be for an FMLA-qualifying reason, Defendant should have notified Plaintiff of her eligibility to take FMLA leave within five business days.

39.    The FMLA required Defendant to give Plaintiff written notice detailing her specific expectations and obligations and explaining any consequences of her failure to meet these obligations.

40.    Defendant never provided Plaintiff with any type of notice, written or otherwise, that she was entitled to FMLA benefits, thus interfering with and denying her substantive rights under the FMLA.

41.   Prior to her termination, Plaintiff was not made aware of any complaints from any patients, assisted living facilities, or clients.

42.   Plaintiff attended weekly team meetings every Tuesday morning.

43.   During these meetings, nothing regarding her performance or patient care was ever brought to her attention nor was she counselled for anything.

44.   The patient at issue that resulted in Plaintiff's termination was being seen by home health for general weakness and dementia.

45.   From the beginning of her care, there were incidents involving the patient and her son's care that bordered on abuse.

46.   The patient was living with her son in a halfway house for sex offenders.

47.   The patient was found several times by different therapists in urine soaked clothes up to her breasts, the son used Clorox wipes for her hygiene care, no food in the home, and lack of overall care (no showers for weeks, no clean clothes, hair matted).

48.   A series of meetings had been held by the patient's caregiving team, including social work, to decide how to proceed.

49.   The patient's new hired caregiver reported to Plaintiff of blood during hygiene after urination by the patient. The blood in the patient's pad and in the toilet, occurred over three weeks.

50.     Plaintiff reported this to the team manager, supervising occupational therapist (OT) and the nurse.

51.     According to the son and caregiver, no one ever came to see the patient after the report.

52.     The incident that Plaintiff was allegedly terminated for was one involving an incident with the patient and blood in the toilet with no urination.

53.     On the day in question, Plaintiff arrived and gave the patient a shower, her caregiver and son were not present.

54.     Plaintiff and the patient proceeded with the ADL tasks. After seeing the blood in the toilet, Plaintiff called the team manager, Brenda Powell.

55.     Ms. Powell instructed Plaintiff to take a picture of the blood and send the pictures to her or a nurse.

56.     After that, Ms. Powell told Plaintiff to call the primary care physician (PCP) and get instructions on how to proceed.

57.     Plaintiff called the PCP with information about the blood in the toilet and was informed to send the patient to the hospital for assessment.

58.     Plaintiff called 911 and waited in her truck until the ambulance arrived.

59.     At that time, Ms. Powell asked Plaintiff to call adult protective services (APS).

60.    Plaintiff made the call and APS accepted the complaint based on the facts given to Plaintiff to give to them.

61.    At no time did Plaintiff make her own assessments or provide false information to anyone.

62.    The team manager gave Plaintiff instructions and she followed them per Defendant's protocol.

63.    The OT, Julie Sneed, had requested a pelvic exam of the patient and supplied the information on the son as being a sex offender.

64.    Plaintiff's employment with Defendant was uneventful until she was injured and asked for reduced hours and time off to recover for a surgery ordered by her worker's compensation appointed doctor.

65.    Plaintiff was trusted to treat up to 40 patients a week at more than 13 separate locations and worked under five different occupational therapists.

66.    Plaintiff followed protocol with every task that she performed, and all duties were within her scope of practice.

67.    On July 1, 2019, within two and a half months of having been injured, filing a workers compensation claim, and requesting time off, Defendant terminated Plaintiff's employment for practicing outside her permissible scope of practice as a COTA with regards to a patient.

68.    Plaintiff's discharge was in close proximity to the aforementioned

protective activates.

69.     Any possible assertion that there was a viable business justification for Plaintiff's termination, is entirely *pretextual* for Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

## FIRST CAUSE OF ACTION
*(DISABILITY DISCRIMINATION - AMERICANS WITH DISABILITIES ACT, (ADA), AND AMERICANS WITH DISABILITIES ACT AMENDMENTS (ADAA))*

70.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 69 of this complaint with the same force and effect as if set forth herein.

71.     This is an action to remedy discrimination on the basis of Plaintiff's disability, perceived or otherwise, in the terms, conditions, and privileges of her employment with Defendant in violation of the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

72.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

73.     At all times material hereto, Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117,

12203; the Americans with Disabilities Act Amendments of 2008, as the Defendant employed more than 15 employees.

74.   Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination, is entirely *pretextual* for Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

75. The adverse personnel action, the termination of Plaintiff's employment,  clearly violated Plaintiff's right under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the ADAA.

76.   As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory discharge from Defendant's employment.

77.   As a result of the wrongful and unlawful retaliatory actions that lead to her discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful

discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

78.   Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

79.   Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

## SECOND CAUSE OF ACTION
*(DISABILITY RETALIATION - AMERICANS WITH DISABILITIES ACT, (ADA), 42 U.S.C. §§ 12111-12117, 12203; THE AMERICANS WITH DISABILITIES ACT AMENDMENTS OF 2008 (ADAA))*

80.   Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 69 of this complaint with the same force and effect as if set forth herein.

81.   This is an action to remedy retaliaton on the basis of Plaintiff's disability, perceived or otherwise, in the terms, conditions, and privileges of her employment with Defendant in violation of the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

82.   At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§

12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

83.   At all times material hereto, Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, as the Defendant employed more than 15 employees.

84.   Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination, is entirely *pretextual* for Defendant's retaliation against her for engaging in a protective activity and for any actual or perceived disability.

85.   The adverse personnel action, the termination of Plaintiff's employment,  clearly violated Plaintiff's right under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the ADAA.

86.   As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory demotion that lead to her discharge from Defendant's employment.

87.     As a result of the wrongful and unlawful retaliatory actions that lead to her discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

88.     Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

89.     Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

### THIRD CAUSE OF ACTION
*(DISABILITY DISCRIMINATION - FLORIDA CIVIL RIGHTS ACT OF 1992, AS AMENDED, CHAPTER 760 ET SEQ., FLORIDA STATUTES)*

90.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 69 of this complaint with the same force and effect as if set forth herein.

91.     Defendant discriminated against Plaintiff on the basis of her disability, perceived or otherwise, in the terms, conditions, and privileges of Plaintiff's denied employment in violation of the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes.

92.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes.

93.     At all times material hereto, Defendant was an employer within the meaning of Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes, as the Defendant employed more than 15 employees.

94.     Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination, is entirely *pretextual* for Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

95.     The adverse personnel action, the termination of Plaintiff's employment, clearly violated Plaintiff's right under the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes.

96.     As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and discriminatory termination that lead to her discharge from Defendant's employment.

97.     As a result of Defendant's wrongful and unlawful discriminatory acts against Plaintiff that lead to her discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

98.     Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

99.     Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes.

FOURTH CAUSE OF ACTION

*(DISABILITY RETALIATION - FLORIDA CIVIL RIGHTS ACT OF 1992, AS AMENDED, CHAPTER 760 ET SEQ., FLORIDA STATUTES)*

100.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 69 of this complaint with the same force and effect as if set forth herein.

101.     This is an action to remedy retaliation by the Defendant in violation of the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes.

102.     At all times material hereto, Plaintiff was an employee of

Defendant within the meaning of Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes.

103.     At all times material hereto, Defendant was an employer within the meaning of Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes, as the Defendant employed more than 15 employees.

104.     Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination, is entirely *pretextual* for Defendant's retaliation against her for engaging in a protective activity and for any actual or perceived disability.

105.     The adverse personnel action, the termination of Plaintiff's employment, clearly violated Plaintiff's right under the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the ADAA.

106.     As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory discharge from Defendant's employment.

107.    As a result of the Defendant's wrongful and unlawful retaliatory actions that lead to her discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

108.    Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

109.    Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes.

### *FIFTH CAUSE OF ACTION*
(*FLA. STAT. § 440.205 Florida Workers' Compensation Retaliation Claim*)

110.    Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 69 of this complaint with the same force and effect as if set forth herein.

111.    Defendant's conduct and commissions constitutes intentional discrimination and unlawful employment practices based upon Florida's Workers' Compensation Retaliation Law. FLA. STAT. § 440.205.

112.    Defendant's acts were with intentional and with reckless disregard for Plaintiff's statutorily protected rights.

113.   On July 1, 2019, within two and a half months of having been injured, filing a workers' compensation claim, and requesting time off, Defendant terminated Plaintiff employment for practicing outside her permissible scope of practice as a COTA with regards to a patient.

114.   Plaintiff's discharge was in close proximity to the aforementioned protective activates.

115.   Any possible assertion that there was a viable business justification for Plaintiff's termination, is entirely *pretextual* for Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

116.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relied.

### *SIXTH CASUE OF ACTION*
*(VIOLATION OF THE FLORIDA PRIVATE SECTOR WHISTLE-BLOWER'S ACT*
*Fla. Stat. Sections 448.101—448.105)*

117.   Plaintiff restates and re-avers the allegations contained within Paragraphs 1- 69 of the Complaint, as if fully set forth herein.

118.   This is an action for a violation of the Florida Private Sector Whistle-blower Act, *Fla. Stat. Sections* 448.101—448.105.

119.   At all material times herein, Plaintiff was an employee of the Defendant within the meaning of *Florida Statute Section* 448.101(3).

120.   At all material times herein, Defendant was an employer, within the meaning of *Florida Statute Section* 448.101(3).

121.   Most recently, Plaintiff was employed as a Certified Occupational Therapy Assistant (COTA), and she was qualified for the position, which she held with the Defendant for approximately one year and three months.

122.   Plaintiff and the patient proceeded with the ADL tasks. After seeing the blood in the toilet, Plaintiff called the team manager, Brenda Powell.

123.    Ms. Powell instructed Plaintiff to take a picture of the blood and send the pictures to her or a nurse.

124.   After that, Ms. Powell told Plaintiff to call the primary care physician (PCP) and get instructions on how to proceed.

125.   Plaintiff called the PCP with information about the blood in the toilet and was informed to send the patient to the hospital for assessment.

126.    Plaintiff called 911 and waited in her truck until the ambulance arrived.

127.   At that time, Ms. Powell asked Plaintiff to call adult protective services (APS).

128.   Plaintiff made the call and APS accepted the complaint based on the

facts given to Plaintiff to give to them.

129.   At no time did Plaintiff make her own assessments or provide false information to anyone.

130.   The team manager gave Plaintiff instructions and she followed them per Defendant's protocol.

131.   The OT, Julie Sneed, had requested a pelvic exam of the patient and supplied the information on the son as being a sex offender.

132.   Plaintiff's employment with Defendant was uneventful until she was injured and asked for reduced hours and time off to recover for a surgery ordered by her worker's compensation appointed doctor.

133.   Plaintiff was trusted to treat up to 40 patients a week at more than 13 separate locations and worked under five different occupational therapists.

134.   Plaintiff followed protocol with every task that she performed, and all duties were within her scope of practice.

135. Fla. Stat. § 415.1034- mandatory reporting of abuse, neglect, or exploitation of vulnerable adults. Any nursing home staff; assisted living facility staff; adult day care center staff; adult family-care home staff; social worker; or other professional adult care, residential, or institutional staff; who knows, or has reasonable cause to suspect, that a vulnerable adult has been or is being abused, neglected, or exploited must immediately report such knowledge or suspicion.

136.   Plaintiff's actions were based upon the reasonable and good faith beliefs of the Plaintiff, that she was complying with any and all applicable federal and state law when no responsive remedial action was undertaken by Defendant's management.

137.   Plaintiff's actions in calling APS and reporting her findings and other relevant information were done according to a reasonable and *bona fide* good faith belief that she had an obligation to report abuse, neglect, or exploitation of vulnerable adults.

138.   In short, after this incident, Plaintiff was terminated from her employment on July 1, 2019, for practicing outside the scope of a certified occupational therapy assistant and in close proximity to her aforementioned statutorily protected activity.

139.   There was no legitimate business reason, or business justification, for implementing the termination of Plaintiff from her employment with Defendant; and Plaintiff's objections to Defendant's legal violations were consistently and reasonably made, in good faith and she had not been previously warned of a deficient job performance.

140. The adverse personnel action, the termination of Plaintiff's employment, as described and set forth above, clearly violated *Florida Statute*

*Section* 448.102(3); and such action clearly constituted a prohibited employment practice, contrary to the public policy of the State of Florida.

141.   As a result of the Defendant's violations of the Florida Private Sector Whistleblower Act, the Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory discharge from employment.

142.   As a result of being wrongfully and unlawfully discharged from her employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

143.   Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for her professional services.

144.   Plaintiff is entitled to recovery of reasonable attorney's fees and costs, pursuant to §448.104, *Florida Statutes*.

### SEVENTH CAUSE OF ACTION
(FMLA INTERFERENCE)

145.   Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 69 of this complaint with the same force and effect as if set

forth herein.

146.  Defendant knew of Plaintiff's medical condition and refused to discuss any type of FMLA leave or acknowledge that she had a stroke.

147.  Defendant had more than sufficient knowledge that Plaintiff's absences were for an FMLA-qualifying reason.

148.  Defendant also had sufficient information to know that Plaintiff was a qualified individual and that her medical condition would have qualified her for FMLA leave.

149.  Plaintiff's verbal notice to Ms. Cadenhead and Ms. Bowman was sufficient to assert rights under the FMLA, as she conveyed more than enough information to put Defendant on notice that an event described in the FMLA may have occurred.

150.  Defendant knew of Plaintiff's medical condition and refused to complete the necessary paperwork for her FMLA leave or acknowledge her medical condition.

151.  At no time after Plaintiff's injury did Defendant, mail or otherwise provide Plaintiff with any FMLA paperwork.

152.  Defendant's supervisors nor Defendant's HR department ever notified Plaintiff in writing of her eligibility to take FMLA leave.

153.  Instead, Ms. A Cadenhead told Plaintiff she wished her luck on trying

to get her PTO for the surgery approved.

154.   On April 12, 2019, Defendant acquired sufficient knowledge that Plaintiff's leave may be for an FMLA-qualifying reason, Defendant should have notified Plaintiff of her eligibility to take FMLA leave within five business days.

155.   The FMLA required Defendant to give Plaintiff written notice detailing her specific expectations and obligations and explaining any consequences of her failure to meet these obligations.

156.   Defendant never provided Plaintiff with any type of notice, written or otherwise, that she was entitled to FMLA benefits, thus interfering with and denying her substantive rights under the FMLA.

157.   Defendant unlawfully interfered with Plaintiff's rights under the Family and Medical Leave Act when it acquired sufficient knowledge that Plaintiff's leave was for an FMLA-qualifying reason.

158.   Defendant knew or should have known of Plaintiff's eligibility to take FMLA and refused, international or otherwise, to notify Plaintiff in writing or otherwise of her FMLA leave rights within five business days.

159.   FMLA requires an employer to give an employee whose leave may be covered by FMLA written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations.

160.   Defendant refused to notify Plaintiff of her FMLA rights and its refusal was with malice and with reckless disregard for Plaintiff's federally protected rights.

161.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

162.   Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

163.   Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to the FMLA.

<u>*PRAYER FOR RELIEF*</u>

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a.     Declaring the acts and practices complained of herein are violation of the ADA, ADAA, Florida Civil Rights Act (FCRA), Florida's Worker's Compensation Retaliation § 440.205, Florida Statue, FMLA and Florida Private Sector Whistleblower Act.

b.     Enjoining and permanently restraining those violations of the ADA, ADAA, Florida Civil Rights Act (FCRA), Florida's Worker's Compensation

Retaliation § 440.205, Florida Statue, FMLA and Florida Private Sector Whistleblower Act.

c.      Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

d.      Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory treatment of her  and make her whole for all earnings she would have received but for Defendant's discriminatory treatment, including but not limited to, wages (past and future), pension, and other lost benefits.

  i.       Awarding Plaintiff Front Pay in lieu of reinstatement;

  ii.      Awarding Plaintiff compensatory damages;

  iii.     Awarding Plaintiff liquidated damages;

  iv.     Awarding Plaintiff the costs of this action together with a reasonable attorney's fees; and,

e.      Granting such other and further relief as the Court deems just and proper in the premises.

### *DEMAND FOR JURY TRIAL*

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

Dated: February 03, 2021.         By: */s/ Clayton M. Connors*
                                  CLAYTON M. CONNORS
                                  Florida Bar No.: 0095553
                                  Email: cmc@westconlaw.com
                                  **THE LAW OFFICES OF**
                                  **CLAYTON M. CONNORS, PLLC.**
                                  4400 Bayou Blvd., Suite 32A
                                  Pensacola, Florida 32503
                                  Tel:  (850) 473-0401
                                  Fax: (850) 473-1388
                                  Attorney for the Plaintiff